7/26/21

AO 106 (Rev. 04/10) Application for a Search Warrant (USAO CDCA Rev. 01/2013)

WM 7/26/2021

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*
**RONALD D. ALLEN**

)
)
)
)
)
)

Case No. MJ-21- 441 -AMG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

The mouth of Ronald D. Allen, DOB:XX-XX-1978 by means of buccal swab(s).

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized):*

DNA swab(s) for comparison to DNA evidence collected from a Kleenex or similar facial tissue that was dropped by the suspect of a bank robbery that occurred at the Security State Bank in Hammon, OK on 07/22/20.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a) and (d) | Bank Robbery |

The application is based on these facts:

See attached Affidavit of Special Agent Keith Frutiger of the Federal Bureau Investigation (FBI), which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**Keith Frutiger, Special Agent, FBI**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 26, 2021

*Judge's signature*

City and state: Oklahoma City, Oklahoma

**Amanda Maxfield Green, U.S. Magistrate Judge**
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Keith W. Frutiger, a Special Agent of the Federal Bureau of Investigation (FBI), having been duly sworn, depose and state as follows:

1.      I have been employed as a Special Agent of the FBI since January 2001.  I am currently assigned to the Oklahoma City Field Office, Woodward Resident Agency, where I am responsible for the investigation of all federal criminal matters, including crimes of bank robbery.  During my investigations, I work closely with local, county and state law enforcement agencies and obtain information from, and records of, their investigations as necessary.  Prior to my twenty (20) years of employment as an FBI Special Agent, I served as a police officer for the City of Edmond, Oklahoma Police Department for approximately seven (7) years.  Throughout my 27-year law enforcement career, I have received significant training and experience in various aspects of criminal investigations and have previously investigated several bank robberies.

2.      I make this affidavit in support of the issuance of a search warrant to search the person of **Ronald Deyoung ALLEN** (B/M; DOB: XX/XX/1978), to seize a deoxyribonucleic acid (DNA) sample from **ALLEN** as evidence of a crime.  This DNA sample is necessary for comparison to DNA evidence collected from a Kleenex or similar facial tissue that was dropped by the suspect of a bank robbery that occurred at the Security State Bank in Hammon, Oklahoma, on July 22, 2020.  As further outlined below, there is probable cause to believe that **ALLEN** committed this bank robbery on July 22, 2020.

3.      Based on my training and experience, I know that it is possible and likely to transfer DNA onto most items that a person touches or otherwise comes into contact with, including paper materials such as Kleenex, facial tissues, currency wrappers, and plastic materials such as zip-ties. The retrieval of a DNA sample from **ALLEN** will allow forensic comparison against any DNA recovered from the above-mentioned materials, which were recovered in the bank following the bank robbery, and which were touched by the suspect according to witness testimony and bank security camera footage.

4.      Through my training and experience, I know DNA can be found in both blood and saliva of a human being. I also know DNA can be collected in a relatively unobtrusive manner by utilizing a buccal swab to obtain a saliva sample from the inside of a subject's mouth. If authorized by court order, law enforcement intends to collect a buccal swab from **ALLEN** to obtain a DNA sample for comparison purposes. The intended manner of collecting **ALLEN's** DNA on a buccal swab will be to use a Q-tip to swab the inside cheek of **ALLEN's** mouth.

## PURPOSE OF AFFIDAVIT

5.      Based upon the investigation in this case as set forth below, as well as my training and experience, I submit that there is probable cause to believe that **Ronald Deyoung ALLEN** unlawfully robbed the Security State Bank on July 22, 2020 using force, violence and intimidation to take money from and in the presence of bank employees, which money belonged to or was in the custody of a Federal Deposit Insurance Corporation (FDIC) insured bank, from and in the presence of bank employees, in violation of Title 18,

United States Code, Section 2113(a) and, in doing so, used a handgun to threaten employees and zip-ties to bind four bank employees in violation of Title 18, United States Code, Section 2113(d).

6.      My knowledge of the facts and circumstances alleged in this Affidavit come from my training and experience, my personal observations, my participation in the federal investigation described herein, my conversations and investigative activities with other law enforcement officers involved in this investigation, and my review of records obtained during this investigation.  Because this Affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant as described herein, it does not include every fact known to me concerning the investigation.

## FACTS SUPPORTING PROBABLE CAUSE

7.      On July 22, 2020, at approximately 9:00 a.m., the Security State Bank located at 301 11th Street in Hammon, Oklahoma, Roger Mills County, Oklahoma, was robbed. This bank is a Federal Deposit Insurance Corporation (FDIC) insured bank located in the Western District of Oklahoma.  The robber, a black male, wore a black dress, possibly a black wig, sunglasses and a white surgical COVID mask.  The robber pointed a handgun at the bank employees with his right hand upon entering the bank.  He carried a white Kleenex or other brand of facial tissue in his left hand.

8.      The robber ordered the bank employees back to the room where the vault (safe) was located.  While in that room, the robber dropped the facial tissue to the floor. He ordered one of the employees to zip-tie the other three employees' hands behind their backs

with zip-ties he provided.  The zip-ties were already looped together like handcuffs.  He ordered the other employee to help him remove the paperclips and straps from the cash in the vault and place it loosely into a backpack that he carried with him.  After taking the cash from the vault, the robber zip-tied the remaining employee and left the bank with approximately $194,500.00 in cash.

9.      The facial tissue, zip-ties, paperclips, and straps from bundles of cash were collected by members of the FBI's Evidence Response Team.  The evidence was sent to the FBI Laboratory where a DNA sample was recovered from the facial tissue.

10.      On July 23, 2020, the day after the bank robbery, your Affiant interviewed an individual hereinafter referred to as Confidential Human Source 1 (CHS 1).  CHS 1 advised that on either July 18 or 19, 2020, **ALLEN** requested CHS 1's assistance to do a bank robbery.  **ALLEN** told CHS 1 that he (**ALLEN**) needed a wig for the bank robbery.  CHS 1 associates with a black male known to CHS 1 as "Boo."  "Boo" was later identified through law enforcement records to be William Griffin.  CHS 1 is an individual who voluntarily provided the statements attributed to him/her in an interview with law enforcement without promise of prosecutorial benefit, payment, or threats from law enforcement. The interview was non-custodial in nature and occurred telephonically. CHS 1 does have a criminal history. Most of CHS 1's criminal history is drug related but CHS 1 served time in prison for manslaughter in the 1980's. Many of CHS 1's statements have been independently corroborated by law enforcement through interviews with other sources of information, surveillance, or other law enforcement records. CHS 1 has not been

asked to testify at this time.  On October 30, 2020, the FBI made a one-time payment of $500 to CHS 1 for information he/she provided regarding drug trafficking in and around Clinton, Oklahoma.  Some of that drug trafficking information involved **ALLEN**.

11.     On July 29, 2020, FBI agents interviewed an individual hereinafter referred to as Confidential Human Source 2 (CHS 2).  CHS 2 advised that approximately one week prior to the bank robbery, **ALLEN** asked CHS 2 to assist him in a bank robbery by being his driver.  **ALLEN** specifically mentioned a bank in Hammon, Oklahoma.  CHS 2 declined.  CHS 2 said that **ALLEN** also talked to William Griffin about it.  The day after the bank robbery, CHS 2 saw Griffin.  Griffin told CHS 2 that he went to the bank with **ALLEN** and that **ALLEN** fled to Oklahoma City with the money. CHS 2 is an individual who voluntarily provided the statements attributed to him/her in an interview with law enforcement without promise of prosecutorial benefit, payment, or threats from law enforcement. The interview was non-custodial in nature and occurred in an interview room at the Clinton Police Department, Clinton, Oklahoma. CHS 2 does have a criminal history and has spent time in state and federal prison. Many of CHS 2's statements have been independently corroborated through interviews with other sources of information, surveillance, or other law enforcement records. CHS 2 has not been asked to testify at this time and does not work for the federal government.

12.     Your Affiant ran a criminal history query on **ALLEN**.  **ALLEN** was arrested by the Oklahoma City Police Department (OCPD) on September 11, 2019 for "Robbery With A Dangerous Weapon."  That case is still pending.  On June 18, 2006, **ALLEN** was

arrested by the OCPD for "Robbery or Attempted (Robbery) With A Dangerous Weapon." **ALLEN** was sentenced to 15 years of imprisonment for that robbery. He began his time with the Oklahoma Department of Corrections (ODOC) on July 26, 2007 and was released on June 24, 2019. **ALLEN** served prison time for a 1997 Custer County (Oklahoma) armed robbery as well. In that case, he was received by ODOC on November 20, 1997 and was released to a suspended sentence on December 21, 2001. **ALLEN** apparently violated the terms of his suspended sentence because he went back to prison on the same case on August 30, 2002 and was released on October 27, 2005.

13.     Your Affiant obtained a copy of the OCPD robbery report for their pending robbery involving **ALLEN** that occurred on September 11, 2019. In that case, **ALLEN** was arrested for allegedly robbing a Dollar General store at gunpoint in Oklahoma City. **ALLEN** was tracked via a GPS tracker that was embedded in a strap of cash taken from the Dollar General store. He had that in his possession upon his arrest. The Security State Bank robber removed and/or made a bank employee remove all the straps from the cash in the vault so that the cash was placed in his backpack loosely as noted in Paragraph 8. The reason for doing this could have been to ensure that there were no GPS trackers hidden or embedded in the cash.

14.     On February 7, 2021, **ALLEN** was arrested by the Snyder (Oklahoma) Police Department for Driving Under the Influence (DUI) of Alcohol or Other Intoxicating Substances. In that case, **ALLEN** was the driver and sole occupant of a 2011 black Chrysler 300C. Investigation showed that **ALLEN** intentionally rammed the black

Chevrolet Malibu driven by his then-girlfriend, Jacqueline Kaye Adams, causing a serious rollover crash that left **ALLEN** pinned in the vehicle. At the time, Adams told police she had been arguing with **ALLEN** over money that was held in a storage unit to which Adams was the only person with a key. Adams is no longer cooperative. Further investigation revealed that **ALLEN** had a loaded Taurus 9mm pistol in his vehicle at the time of the crash. That pistol is similar in appearance to the pistol used in the Security State Bank robbery. On June 15, 2021, **ALLEN** was indicted by a federal grand jury in the Western District of Oklahoma for being a felon in possession of a firearm related to the Snyder Police Department case.

15.    Paperwork in the vehicle revealed that **ALLEN** purchased the 2011 Chrysler 300C from Finish Line Automotive in Oklahoma City, Oklahoma on August 5, 2020, for $9,500.00 in cash. That purchase date is exactly two weeks after the Security State Bank robbery. Your Affiant contacted Finish Line Automotive on April 5, 2021. Manager Lily Young confirmed **ALLEN'S** purchase of the vehicle with $9,500.00 in cash.

16.    On April 1, 2021, your Affiant interviewed Adams. Adams denied making the statement that she had been fighting with **ALLEN** over money in a storage unit on the day of the crash. Adams claimed that she did not know **ALLEN** well and that their relationship was short, having met him in November 2020. The relationship ended in February 2021 after the vehicle crash. Adams did not know where **ALLEN** worked or if he even had a job at all. **ALLEN** always had money and paid for Adams to get her hair and nails done frequently. Adams was having a rough time financially when she met

ALLEN and he was able to help her financially.  Adams claimed to know nothing about the Security State Bank robbery and said that she had only heard "word on the street" that ALLEN had previously been involved in robberies.

17.     ALLEN is currently incarcerated at the Oklahoma County Jail in Oklahoma City, Oklahoma.  He has holds placed on him by the Kiowa County Sheriff's Office, the OCPD, and the FBI.

## CONCLUSION

18.    Based on the facts and circumstances set forth herein, your Affiant submits that there is probable cause to believe that **Ronald Deyoung ALLEN** committed the robbery of the Security State Bank in violation of Title 18, United States Code, Section 2113(a) and in the commission of that crime, he assaulted four bank employees in violation of Title 18, United States Code, Section 2113(d), and that a search of **ALLEN'S** person to obtain a DNA sample will yield evidence further linking him to the July 22, 2020 Security State Bank robbery.   Your Affiant respectfully requests that a search warrant be issued authorizing the search of the person of **Ronald Deyoung ALLEN** to obtain two buccal swab DNA samples from the mouth of **ALLEN**.   Agents/officers will obtain cotton swabs of the defendant's saliva via buccal swabs in the normally accepted forensic manner.   The DNA samples collected from **ALLEN** will be compared to the DNA recovered from the facial tissue dropped by the robber in the Security State Bank robbery.

**FURTHER, YOUR AFFIAIT SAYETH NOT.**

Respectfully submitted,

KEITH W. FRUTIGER
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 26th day of July 2021.

AMANDA MAXFIELD GREEN
United States Magistrate Judge